UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

DAVID JANKOWSKI,

    Defendant,

STEPHEN, PAULA, ALEX, and JENNA JANKOWSKI,

    Interested Parties.

Case No. 24-50222
Honorable Laurie J. Michelson

**ORDER DENYING PETITIONERS' MOTION
FOR RECONSIDERATION [30]**

Less than one month after filing this miscellaneous action seeking to protect certain assets from being used to satisfy David Jankowski's criminal restitution obligations, Petitioners Stephen, Alex, Jenna, and Paula Jankowski filed an emergency motion to release from escrow the proceeds from the sale of the Maple Garden Apartments.[1] Petitioners claimed that, as members of Maple Garden Associates, LLC, they were entitled to their share of the proceeds from the sale of the property. The government disagreed. It argued that Petitioners were really just nominees of the now convicted David Jankowski, such that the government is entitled

---

[1] Because the Petitioners all share the same last name, the Court will often refer to them by just their first names.

to all the proceeds. Following a limited evidentiary hearing, the Court did what the parties asked: it issued a ruling on who was entitled to the sale proceeds. In doing so, it found that Alex, Jenna, and Paula were indeed nominees of David. Dissatisfied with this ruling, these Petitioners have filed a motion for reconsideration, arguing that the Court applied the wrong law. Finding no such mistake, the Court DENIES the motion.

## I.

### A. Background

Following a jury trial, David Jankowski was convicted on July 11, 2022, of unlawful distribution of controlled substances, health care fraud, and conspiracy to commit the two offenses. He was sentenced to 240 months' imprisonment and ordered to pay $5.2 million in restitution to Medicare. *See United States v. Jankowski*, No. 17-20401, (E.D. Mich. May 18, 2023), ECF No. 253. A final order of forfeiture was also entered in the amount of $35 million. *Jankowski*, No. 17-20401, ECF No. 238. The Sixth Circuit affirmed David's conviction and sentence, including the forfeiture order. *United States v. Jankowski*, No. 23-1404, 2024 U.S. App. LEXIS 26960 (6th Cir. Oct. 23, 2024).

Numerous lawsuits have arisen in connection with the government's collection efforts to satisfy these monetary penalties. This is one of them. David's wife and children initiated this miscellaneous case by filing a Motion to Release and/or Narrow Government Liens on Real Property Subject to the Restitution Order. (ECF No. 1.) The Jankowski family members claim to have membership interests in limited

liability companies that own certain properties. They want to prevent the government from encumbering their individual interests to satisfy David's restitution obligation.

While their initial motion was pending, Petitioners filed a separate emergency motion to have their purported shares of the proceeds from the sale of Maple Garden Apartments—one of the properties at issue—immediately released from escrow. (ECF No. 6.) Petitioners argued that since the filing of the initiating motion "an urgent issue arose, namely, that capital gains taxes owed by the members of Maple Gardens Association, LLC, namely, Third Parties, Paula, Stephen, Alex and Jenna Jankowski are due." (*Id*. at PageID.51.) And, they continued, "[w]ithout the release of the funds held by the government, the Third Parties are unable to pay their taxes due to the Internal Revenue Service ('IRS') and State of Michigan on April 15, 2024. If the taxes are not paid, additional penalties (as high as 25% of the taxes owed) and interest will start accruing." (*Id*.)

The presiding judge at the time ordered the parties to submit supplemental briefing on the issue of distribution of the Maple Garden funds. (ECF Nos. 8, 9, 11.) Of course, in deciding whether to release the funds to Petitioners, the Court needed to first determine whether they had a legitimate interest in the funds—especially since the government argued they did not and opposed the motion (ECF No. 7). The government took the position that MGA LLC was a corporate entity wholly owned and controlled by David, who utilized the Petitioners as straw holders of membership interests to shield his assets. Accordingly, the parties' briefing focused on the central inquiry of whether David remained the true owner of all of MGA such that Petitioners

3

were simply his nominees and thus not entitled to a share of the proceeds. (*See* ECF Nos. 9, 11.)

Prior to any ruling on the emergency motion, the case was reassigned. (ECF Nos. 19, 20.) This Court quickly reviewed the briefing and found that it needed additional information about Stephen Jankowski's individual interest. Thus, the Court scheduled the emergency motion for hearing on December 20, 2024, and directed that Stephen Jankowski be present to provide additional testimony about the acquisition of his interest in MGA. (ECF No. 24.)

But before the hearing, the Court noted another deficiency in the briefing. The parties did not address the relevant standards of review or burdens of proof. Accordingly, the Court requested that the parties provide supplemental briefs "detailing the applicable burden(s) of proof with respect to the pending motion." (*Id.*) The parties complied. (ECF Nos. 25, 26.)

Petitioners took the position that "the burden of proof for their pending Motion is twofold: first, the Petitioners must prove that they have a valid ownership interest in the MGA proceeds; and then, the government must prove any defense to this position, such as nominee owner or fraudulent conveyance." (ECF No. 25, PageID.562.) For its part, the government did not articulate a competing standard of review. Rather, it opted to use its supplemental briefing to argue that the emergency motion was moot because tax season had come and gone and there was insufficient evidence in the record that the Petitioners had to pay any tax penalties based on the sale of the Maple Garden Apartments. Thus, believing the emergency had subsided,

4

the government asked the Court to use its discretion to "deny the Motion and permit the adversarial process to function: permitting the parties sufficient time to develop and properly present their positions, conduct meaningful discovery, and allow the Court time to analyze the arguments and evidence presented." (ECF No. 26, PageID.569.) The Petitioners did not share this view.

## B. Hearing

On December 20, 2024, the Court held the limited evidentiary hearing. During the proceedings, the Court broached several topics with the parties.

*First*, the Court went through each of the nine properties identified in Petitioners' opening motion to narrow/release liens to determine if the parties had made any progress on resolving or narrowing their disputes. (ECF No. 33, PageID.701–715.)

*Second*, the Court discussed the procedural posture of the case. In a nutshell, there was discussion as to whether the case should proceed as a miscellaneous action with an amended motion to narrow/release liens or whether it should be refiled as a separate lawsuit to quiet title. (ECF No. 33, PageID.717.)

*Third*, regarding the emergency motion for the release of the MGA proceeds, the parties agreed that Petitioners had the initial burden to show that they possessed an interest in the proceeds, and then the burden shifted to the government to demonstrate, by a preponderance of evidence, that those interests were not legitimate. (*Id.* at PageID.718–719.) The government, however, reiterated its position that Petitioners' motion was not an "emergency" that this Court should permit

5

additional discovery. (*Id.* at PageID.722.) To no avail. The Petitioners again rejected this suggestion. They explained that they were accruing "huge capital gains" taxes on the MGA proceeds without having yet received any of the proceeds. (*Id.* at PageID.719–724; *see id.* at PageID.756 ("[A]s far as it being an emergency, the basis of the emergency . . . it's the same thing that they're accruing tax and interest. And 25 percent garnered a $694,000 capital gain.").)

*Fourth*, the Court heard testimony from Stephen Jankowski regarding the receipt of his 25 percent interest in MGA. (*Id.* at PageID.726–755.)

And finally, the Court allowed the parties to present any final arguments they had regarding the emergency motion. The Court also reiterated the options: it would either rule on the emergency motion based on the parties' briefing and information presented during the hearing or allow the parties to pursue the government's proposed path—that is, start over, file a (quiet title) complaint, and then engage in normal discovery and dispositive motion practice. The following answer was provided:

> THE COURT: Well, but if I'm going to decide this emergency motion, I'm going to decide this emergency motion and that's based on what you-all have given me now. Not some later summary judgment brief. I mean, that's the Government's position is: "Let's start over. Have discovery. Have summary judgment briefing." I thought you-all wanted this done on this emergency motion.
>
> [PETITIONER COUNSEL]: Yes, we do, we want [the MGA proceeds] released right now on this emergency.

(*Id.* at PageID.762.)

So the Court ruled. From the briefing and argument, the Court believed the central issue was whether the Jankowski family members had legitimate membership interests in Maple Garden Associates LLC or whether they were simply

6

nominees of David Jankowski such that he was the true owner of the proceeds. In an oral ruling, the Court found that "[t]he parties agree that this Court uses the *Porta-John* six factor test to determine whether property is held by a nominee." (*Id.* at PageID.773.) It then addressed each of the six-factors as they applied to the Jankowski family and determined that "Paula, Alex, and Jenna were nominees and/or alter-egos of David and do not have a legitimate interest in any portion of the MGA proceeds." (*Id.* at PageID.776.) "With respect to Stephen Jankowski," however, the Court determined that it needed more time to decide whether he had a legitimate interest in the MGA proceeds and informed the partes that it would "take that portion of the motion under advisement and issue a written ruling." (*Id.*)

Immediately following the ruling, counsel for Paula Jankowski asked for clarification. He believed the only purpose of the hearing was to determine whether the "funds were going to be released on an emergency basis" such that he did not think that Paula was "at risk of having her entire interest in Maple Garden wiped out." (*Id.* at PageID.779.) But he provided no explanation as to how the Court was to decide whether to release the funds to Paula without first determining if Paula was legally entitled to a share of those funds. (*Id.*) Counsel for Stephen, Alex, and Jenna also expressed their dissatisfaction with the Court's ruling. (*Id.* at PageID.782.) Indeed, Stephen's counsel stated that the parties "did not agree" that the *Porta-John* test applied in this case and that "we just briefed it [that way] because that's what the Government was saying." (*Id.* at PageID.785 (cleaned up).)

7

Ultimately, the Court issued a written order on its oral ruling finding that "with respect to MGA, Paula, Alex, and Jenna Jankowski are nominees of David Jankowski such that they do not have a legal interest in the proceeds from the sale of the Maple Garden Apartments." (ECF No. 29, PageID.660.)

Now before the Court is Petitioners' motion for reconsideration. (ECF No. 30.) Petitioners argue that *Porta-John of America, Inc. v. United States*, 4 F. Supp. 2d 688 (E.D. Mich. 1998), "is not controlling authority for analyzing nominee-relationships which involve transfers of property" and that "Michigan courts have neither endorsed nor applied the *Porta-John* decision." (ECF No. 30, PageID.666.)

## II.

Motions for reconsideration of non-final orders are disfavored. E.D. Mich. LR 7.1(h)(2). Such motions may only be brought if a different outcome is warranted for one of three recognized reasons: (1) the Court made a mistake, (2) there has been an intervening change in controlling law, or (3) "new facts" are available. *Id.*

Petitioners argue only the first reason: mistake. So they must show that the Court made a clear error and that, if that clear error was corrected, the outcome would be different. *See Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922, 925 (E.D. Mich. 2020) (providing that party seeking reconsideration under Local Rule 7.1(h) "must show that the district court clearly erred, that the court's initial decision will change if the clear error is corrected, and that the error was based on the law and record as it stood when the district court made its initial decision"); *Good v. BioLife Plasma Servs., L.P.*, 647 F. Supp. 3d 555, 559–60 (E.D. Mich. 2022) ("For purposes

8

of reconsideration [under Local Rule 7.1(h)(2)], mistakes and outcomes are mutually exclusive . . . [T]he purported mistake must be some substantive error in the court's legal analysis or factual findings based on the record at the time of the decision—it cannot be the outcome itself.").

## III.

### A. Prior Briefing

Because the focus is on the record at the time of the decision, the Court starts with the arguments that the parties made before the Court ruled on the "Emergency Motion for Return of Property Held in Escrow From Sale of Maple Garden Apartments." (ECF No. 6.) Before diving in, the Court notes that the parties agree that, in its restitution gathering efforts, the government is only entitled to recover the assets of David Jankowski. The essence of the dispute in this miscellaneous action is whether certain assets—proceeds, properties, interests in LLCs—are really David's or those of his family members.

In its initiating motion to release and/or narrow the government liens on certain properties, including the Maple Garden Apartments, Petitioners argued that "[t]he procedure for reaching a judgment debtor's interest in a partnership or limited liability company is a charging order," which, they said, "is akin to a garnishment." (ECF No. 1, PageID.13.) They argued that if the government wanted to reach the assets of the various LLCs of which David Jankowski was just one member, it needed to do so through the process set out under the Michigan Limited Liability Company Act. *See* Mich. Comp. Laws § 450.4507.

In response, the government explained that under the Mandatory Victim's Restitution Act, 18 U.S.C. § 3613(c), a lien for restitution attaches to "all property and rights to property of the defendant-debtor." (ECF No. 7, PageID.60.) This means that when collecting under the MVRA, the government steps into the defendant's shoes and acquires whatever rights the defendant himself possesses. Thus, said the government, "Petitioners mischaracterize[d] the position of the United States as a 'third party' or a 'creditor of one member of an LLC,'" and "misplaced" their reliance on the Michigan Limited Liability Company Act. (*Id.* at PageID.67.)

The government further argued that David Jankowski was entitled to all of the funds from the sale of the Maple properties. (*Id.* at PageID.72 (arguing that Maple Garden Associates LLC "was a creation entirely of [Defendant's]; he wholly funded the corporation . . . [and] managed all of its operations").) The government therefore requested "leave to file a supplementary brief concerning title to the escrowed funds with its collected evidence demonstrating [that] the funds belong 100% to the Defendant." (*Id.* at PageID.73.)

Notably, the government also pointed out that "Petitioners filed their motion as a miscellaneous matter to Jankowski's criminal matter" rather than a "civil complaint for quiet title under 28 U.S.C. § 2410" that would have been more conducive to a normal scheduling order with discovery and motion deadlines. (*Id.* at PageID.71.) In reply, Petitioners said the government was "proposing an exercise in wasted motion" and that bringing a quiet title action "would not facilitate a speedier

10

or fairer resolution of the current litigation. It would change absolutely nothing." (ECF No. 10, PageID.482–483.)

Then Petitioners filed the emergency motion (ECF Nos. 6, 16) requesting the immediate release of the escrowed money from the sale of the Maple Garden Apartments. Petitioners claimed that under 18 U.S.C. § 3613 the government could proceed only against the property of the criminal defendant—David Jankowski—and not against property owned by third parties. (ECF No. 6, PageID.53.) In other words, while the government could take David's share, his wife and children were entitled to their separate individual shares commensurate with their membership interests in MGA.

The authority relied on by Petitioners was limited. They cited *United States v. Perry*, 360 F.3d 519, 526 (6th Cir. 2004), for the assertion that "Michigan law provides that third parties have a property right of constitutional magnitude." (ECF No. 6, PageID.53 (internal quotations omitted).) And they cited *Matthews v. Eldridge*, 424 U.S. 319, 348–49 (1976), for the assertion that third parties are owed due process when their interests are affected. Read together, these cases merely stand for the well-known proposition that the government may not deprive an individual of property interests without due process of law.

Presumably after reviewing this briefing, then-presiding Judge Stephen J. Murphy ordered the government to file supplemental briefing to provide "the evidence demonstrating that the escrowed funds at issue belong 100% to Defendant [David Jankowski]." (ECF No. 8, PageID.81.) The government's supplemental brief

11

explained that while "there is no known Michigan law discussing nominee theory," Michigan federal courts "have adopted the federal *Porta-John* six factor test to determine whether property is held by a nominee." (ECF No. 9, PageID.96 (citing *Porta-John*, 4 F. Supp. 2d at 701).) The government argued, after applying the *Porta-John* factors, that Stephen, Paula, Alex, and Jenna were all nominees of David Jankowski. (*Id*. at PageID.98–100.)

For their part, Petitioners' supplemental briefing did *not* argue that the government was wrong to rely on *Porta-John*. (ECF No. 11.) They did not suggest any other way to determine whether Petitioners were nominees of David Jankowski. And they did not raise the charging order procedure. True, Petitioners mentioned in passing that "[s]ome Courts have hesitated to use the *Porta-John* nominee theory analysis." (*Id*. at PageID.502 (citing *Dombrowski v. United States*, 461 F. Supp. 3d 575, 586 (E.D. Mich 2020)).) But they went on to apply the *Porta-John* factors and explain why, in their view, they were not nominees of David Jankowski. (*See id*. ("Despite this, addressing the *Porta-John* factors, it is clear that the Petitioners are not nominee owners of MGA as follows.").)

From this briefing, the Court applied the *Porta-John* factors in ruling on the emergency motion.

### B. Motion for Reconsideration

Fast-forward from that briefing on the emergency motion to the motion for reconsideration. Petitioners now say, for the first time, that "*Porta-John* is not controlling authority for analyzing nominee-relationships which involve transfers of

12

property" and that "Michigan courts have neither endorsed nor applied the *Porta-John* decision." (ECF No. 30, PageID.666.) Instead, they say, the Court should have applied Michigan cases addressing the requirements for piercing the corporate veil, like *Green v. Ziegelman*, 873 N.W.2d 794 (Mich Ct. App. 2015) and *Gledhill v. Fisher & Co.*, 262 N.W. 371 (Mich. 1935).

But a motion for reconsideration is "not a vehicle" to "proffer new arguments or evidence that the movant could have brought up earlier." *L & P Auto Luxembourg, S.A.R.L. v. Neways Elecs. Riesa GmbH*, No. 24-12202, 2024 U.S. Dist. LEXIS 195469, at *4 (E.D. Mich. Oct. 28, 2024) (citing *Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)); *see Bank of Ann Arbor v. Everest Nat'l Ins. Co.*, 563 F. App'x 473, 478 (6th Cir. 2014) ("Since Defendant used its motion for reconsideration as an opportunity to re-argue the case and introduce a new argument that could have been presented earlier, the district court did not abuse its discretion in denying Defendant's motion for reconsideration."). That alone is reason enough for this Court to deny Petitioners' motion for reconsideration.

Nevertheless, the Court finds that it was correct to apply the *Porta-John* analysis in deciding the parties' entitlement to the MGA proceeds. To be sure, Petitioners are right that state law determines whether they have an existing property interest. *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) ("Once state law determines that a property interest exists, federal law dictates the tax consequences."). But in the absence of clear Michigan law on the issue of nominee interests a court may look to other law for guidance. *Id.* at 253. And, as the

13

government has pointed out, "[t]here is no known Michigan law discussing nominee theory, so Michigan federal courts have adopted the federal *Porta-John* six factor test to determine whether property is held by a nominee." (ECF No. 9, PageID.96); *see United States v. DeTar*, No. 04-749, 2009 U.S. Dist. LEXIS 65064, at *13–14 (W.D. Mich. July 28, 2009) (stating that "the Court is not aware of any Michigan case law discussing nominee theory," reasoning that "in the absence of clear state law on the issue, a court may look to other courts for guidance," and applying *Porta-John*); *Bennett v. United States*, No. 09-12352, 2010 U.S. Dist. LEXIS 130173, at *37 (E.D. Mich. Dec. 9, 2010) ("Although there appears to be no Michigan case law discussing nominee theory by that name, federal courts in Michigan have consider[ed]" *Porta-John's* six factors).[2] So the Court did not err in applying *Porta-John* to determine that Alex, Jenna, and Paula were nominees of David Jankowski.

Nor did the Court err in the way it applied those factors. Petitioners' motion simply rehashes their prior contentions as to why they believe they should not be deemed nominees under the *Porta-John* factors. But that is not the province of a motion for reconsideration. *See, e.g.*, *Southfield Educ. Ass'n v. Bd. of Educ. of the Southfield Pub. Sch.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018) ("A motion for

---

[2] Additionally, "[t]hough Michigan courts do not discuss nominee theory by that name," the *Porta-John* factors "are virtually identical to 'badges of fraud' that are often used by Michigan courts to determine whether property has been fraudulently conveyed to a third party." *DeTar*, 2009 U.S. Dist. LEXIS 65064, at *15 n.4. *Compare Porta-John*, 4 F. Supp. 2d at 701, *with Coleman-Nichols v. Tixon Corp.*, 513 N.W.2d 441, 449 (Mich. Ct. App. 1994).

reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments").

One final note. Petitioners say they were blindsided by the Court's oral ruling. They suggest some unfairness in the Court hearing testimony from only Stephen Jankowski and that "[n]either Petitioners nor the Government anticipated that the Court would issue an order similar to one associated with a motion for Summary Judgment under FRCP 56." (*Id.* at PageID.665.)

These complaints ring hollow. It was Petitioners who chose to file an emergency motion requesting the immediate release of the MGA proceeds. And it was Petitioners who, repeatedly, rejected calls for discovery. (*See, e.g.*, ECF No. 33, PageID.762; ECF No. 10, PageID.482–483.) The fact that the Court requested testimony from Stephen, who made the strongest argument in the briefing for having a legitimate membership interest in the MGA LLC, should have put the Petitioners on further notice that the Court was evaluating their individual interests. Especially because there was no way for the Court to decide their motion without undertaking that very analysis.

## IV.

Thus, for the reasons above, the Court DENIES Petitioners' motion for reconsideration (ECF No. 30).

SO ORDERED.

Dated: April 18, 2025

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES DISTRICT JUDGE